# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BOSS CONSTRUCTION, INC., a Washington corporation, | No. 49273-3-II |
| Respondent, | |
| v. | |
| HAWK'S SUPERIOR ROCK, INC., a Washington corporation, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Hawk's Superior Rock, Inc. (Hawk's Superior) appeals the superior court's denial of Hawk's Superior's CR 60(b)(1) motion for relief from an order granting summary judgment in favor of Boss Construction Inc. (Boss) in an underlying breach of contract claim. Hawk's Superior argues that (1) the superior court abused its discretion by denying Hawk's Superior's CR 60(b)(1) motion for relief without addressing the four factor test articulated in *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581 (1968); (2) the superior court erred in finding that Hawk's Superior's counsel's failure to update his address with the court did not constitute mistake, inadvertence, or excusable neglect under CR 60(b)(1); and (3) the superior court abused its discretion in denying Hawk's Superior's motion to reconsider again without addressing the *White* test. We affirm.

FACTS

A.     BREACH OF CONTRACT CLAIM

On August 11, 2014, Boss filed a complaint for damages against Hawk's Superior.  In its complaint, Boss alleged that Hawk's Superior had materially breached express and implied warranties in the contract concerning the quality of its rock and gravel—the subject matter of the contract.  On September 29, Hawk's Superior filed an answer denying these allegations and asserting several affirmative defenses, including failure to mitigate damages.

Neither party took further action in the matter for the next year and a half, until Boss filed a motion for summary judgment on February 8, 2016.  In support of its motion, Boss filed a declaration by its vice president stating that Hawk's Superior offered to sell Boss the rock and gravel it needed to complete a Washington State Department of Transportation (WSDOT) construction project.  In making such offer, Hawk's Superior warranted that its rock and gravel would meet the WSDOT's mandated quality specifications.  But the rock and gravel Hawk's Superior provided failed to meet WSDOT's specifications, which forced Boss to purchase the required rock and gravel from a different supplier at a substantially higher cost.

Between the time Boss filed its complaint and its motion for summary judgment, Hawk's Superior's counsel, C. Craig Holley, moved office locations within his building.  Holley notified the state bar association, as well as his billing and insurance company of his change in office location.  He did not, however, notify Boss's counsel or the court clerk of his new address.

Shortly after Holley moved his office location, he underwent surgery.  At the time, Hawk's Superior was Holley's only pending case.  However, because no action had been taken on the case

for a year and a half, Holley admitted that "it just wasn't in [his] mind" to update his address with the court and opposing counsel. Verbatim Report of Proceedings (VRP) (May 31, 2016) at 3.

Holley never received Boss's motion for summary judgment. As a result, Holley never filed a response to Boss's motion for summary judgment on Hawk's Superior's behalf, and Holley did not appear at the motion hearing scheduled for March 14, 2016.

At the summary judgment motion hearing, the superior court considered the summons and complaint, the affidavit/declaration of service on Hawk's Superior, the motion for default against Hawk's Superior, the notice of appearance of C. Craig Holley, Hawk's Superior's answer to the complaint for damages, the notice of hearing on Boss's motion for summary judgment, the declaration of Chris Hart re motion for summary judgment, and Boss's motion for summary judgment. The superior court entered an order granting plaintiff's motion for summary judgment and awarded judgment against Hawk's Superior in the principle sum of $241,708.33, judgment for costs in the amount of $303.00, and a statutory attorney fee of $250.00.

B.     MOTION SEEKING RELIEF FROM JUDGMENT

Holley learned of the superior court's summary judgment order on April 18, after Hawk's Superior's owners started receiving phone calls about a Grays Harbor County Superior Court judgment against them. On April 29, Hawk's Superior filed a motion seeking relief from judgment under CR 60(b)(1). Holley filed a declaration in support of the motion, in which he stated that he had updated his change of address with the Washington State Bar Association and applied for a mail forwarding order with the post office. Holley also stated that he had never received any document by mail from Boss's counsel and that genuine issues of material fact remain in the underlying contract claim.

In its motion for relief, Hawk's Superior argued that the circumstances surrounding Holley's mail and the fact he never received actual notice of Boss's summary judgment motion constituted "procedural irregularity." Clerk's Papers (CP) at 36. Boss filed a response on May 26, asserting that it had mailed the notice of hearing and motion for summary judgment to Holley on February 4. The notice and motion for summary judgment were sent to Holley's address on file with the court on February 4.

At the hearing on the motion for relief, Holley informed the superior court that he did not notify opposing counsel or the county court clerk of his change in address. As to which provision of CR 60(b) relief was being sought, Holley stated, "Well particularly under mistake or inadvertence, Your Honor." VRP (May 31, 2016) at 4. When asked again, Holley replied, "Under inadvertence or an irregularity." VRP at (May 31, 2016) at 4. Holley conceded that failing to notify opposing counsel or the court was his mistake, but it was due to the irregularity of his medical treatment coupled with the case remaining dormant for approximately 15 months.

The superior court found that Holley had failed to comply with the court rules when he failed to notify opposing counsel of his change in address.[1] The superior court also found such failure was not inadvertent. The superior court further found that Hawk's Superior's motion for relief did "not properly fall within any of the provisions of CR 60(b)." VRP (May 31, 2016) at 7. Therefore, the superior court concluded that it could not grant the motion because Hawk's Superior did not "have a legal basis for it." VRP (May 31, 2016) at 7.

---

[1] The superior court did not identify the court rule(s) to which it was referring.

C.    MOTION FOR RECONSIDERATION

On June 9, Hawk's Superior filed a motion for reconsideration under CR 59(a)(7) and (a)(9), asserting that the superior court's ruling denying its motion to vacate the summary judgment order was legally erroneous and a denial of substantial justice. In support, Hawk's Superior provided the following documents: supplemental declaration of Holley, supplemental declaration of the tenant who moved into Holley's prior office, declaration of Hawk's Superior's owners, and an attached exhibit e-mail from the WSDOT regarding the gravel tests. This evidence purportedly showed that Hawk's Superior's rock and gravel complied with WSDOT specifications, that Hawk's Superior had never made any warranties to Boss, and that the tenant in Holley's former office could not recall ever receiving any first-class mail from Boss's counsel. In its motion for reconsideration, Hawk's Superior argued that it had shown a "strong, if not conclusive, defense on the merits," and further asserted that Holley's non-appearance at the summary judgment motion hearing "was occasioned by mistake, inadvertence, surprise, or excusable neglect." CP at 66 n.1, 67.

On June 21, the superior court sent a letter directing Boss to respond to Hawk's Superior's assertion that substantial evidence supported a defense to Boss's breach of contract claim. In this letter, the superior court advised that when Boss filed its motion for summary judgment, it had attached a declaration from its vice president, which referenced an "'Exhibit A.'" CP at 79. However, this exhibit was not actually attached to the supporting declaration. The superior court directed Boss to attach the exhibit.

Boss filed the attached exhibit on July 8. The exhibit contained the 2010 price quote from Hawk's Superior to Boss, which contained the statement, "*All Rock Meets DOT and Corp. of*

*Engineer Specifications for Hardness & Wear*." CP at 84. Boss also filed an e-mail from WSDOT from December 15, 2010, which notified Boss that Hawk's Superior failed to meet its special gravel borrow specifications.

On July 19, the superior court denied Hawk's Superior's motion for reconsideration. Hawk's Superior appeals both the order denying its CR 60(b)(1) motion for relief and the order denying its motion for reconsideration.

## ANALYSIS

### A. MOTION FOR RELIEF FROM JUDGMENT

Hawk's Superior argues that the superior court applied an incorrect legal standard in evaluating its motion for relief from judgment because the superior court did not consider the four factor test articulated by the Washington Supreme Court in *White v. Holm*, 73 Wn.2d 348. Specifically, Hawk's Superior contends that the superior court's failure to address the *White* test on the record in itself constituted abuse of discretion. Additionally, Hawk's Superior argues that the superior court abused its discretion in finding that Hawk's Superior's counsel's failure to update his mailing address with the court was not inadvertence or excusable neglect under CR 60(b)(1). We disagree.

#### 1. Standard of Review

We review a superior court's ruling on a motion to vacate a judgment under CR 60(b) for abuse of discretion. *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 434, 378 P.3d 183 (2016); *Showalter v. Wild Oats*, 124 Wn. App. 506, 510, 101 P.3d 867 (2004). Review of a CR 60(b) ruling is limited to the propriety of the denial of relief from judgment, not of the underlying judgment the party sought to vacate. *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179 (1985).

A court abuses its discretion if its decision to deny a 60(b) motion is manifestly unreasonable or based on untenable grounds. *Showalter*, 124 Wn. App. at 510. Therefore, we will only overturn the superior court's decision if the decision "'rests on facts unsupported in the record or was reached by applying the wrong legal standard,'" or if the superior court applied the correct legal standard, but "adopt[ed] a view 'that no reasonable person would take.'" *Mitchell v. Wash. State Inst. of Pub. Policy*, 153 Wn. App. 803, 822, 225 P.3d 280 (2009) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)), *review denied*, 169 Wn.2d 1012 (2010).

2.      Addressing the *White* factors on the record

Hawk's Superior argues that because it sought relief from judgment under CR 60(b)(1),[2] the superior court was required to make findings of fact on the record on each of the four factors articulated in *White*. Hawk's Superior's argument fails because no case requires the court to make specific findings of fact on the record regarding each factor. *White*, 73 Wn.2d at 352-53.

Hawk's Superior relies on several cases involving denial of motions to vacate default orders as support for the proposition that the superior court's failure to address each *White* factor on the record is itself an abuse of discretion. But Hawk's Superior mischaracterizes the appellate court rulings.

For example, in *Gutz v. Johnson*, 128 Wn. App. 901, 911, 117 P.3d 390 (2005), *aff'd sub nom., Morin v. Burris*, 160 Wn.2d 745, 161 P.3d 956 (2007), the court held that the trial court abused its discretion in not reviewing whether the moving party satisfied the *White* test. The

---

[2] Hawk's Superior did not raise *White* in its original motion for relief. Rather, Hawk's Superior first raised the *White* test in its motion for reconsideration.

court's holding was not based on the fact that the trial court had failed to enter specific findings of fact on each factor, but because the trial court only considered procedural arguments related to notice of default judgments under CR 55 after the parties had extensively briefed the four elements they needed to prove in a CR 60(b) hearing. *Id.* at 909.

Also, the court in *Norton v. Brown*, 99 Wn. App. 118, 992 P.2d 1019, 3 P.3d 207 (1999), did not hold that consideration of the *White* factors must be "on the record," as Hawk's Superior contends. Br. Appellant at 11. Rather, *Norton* held that the trial court abused its discretion in refusing to vacate a default judgment where the defendant presented a prima facie defense and showed that his failure to appear was due to mistake, inadvertence or excusable neglect. *Norton*, 99 Wn. App. at 124.

Hawk's Superior fails to provide any legal authority aside from *Norton* discussed above to support its argument that a superior court is required to make specific findings on the record on each *White* factor. We decline to impose such a requirement. Thus, we hold that the superior court did not err by not making specific findings on each *White* factor on the record.

3.      Applying the *White* Test[3]

Under CR 60(b)(1), a superior court may relieve a party from a final judgment, order, or proceeding for "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." The law favors resolution of cases on their merit. *Stanley v. Cole*, 157 Wn. App. 873, 879, 239 P.3d 611 (2010). Because a default order deprives the parties of a trial on the merits, a proceeding to set aside a default judgment is equitable in character and the relief afforded

---

[3] As to the applicability of the *White* test, both parties assume the *White* test applies. For the purposes of this appeal, we will assume it applies as well.

"is to be administered in accordance with equitable principles and terms." *White*, 73 Wn.2d at 351. With this principle in mind, the Washington Supreme Court held that a four part test shall guide trial courts when evaluating a motion to set aside a default judgment under CR 60(b)(1). *Id.* at 352.

> The *White* test requires that the moving party show:
>
> (1) That there is substantial evidence extant to support, at least prima facie, a defense to the claim asserted by the opposing party; (2) that the moving party's failure to timely appear in the action, and answer the opponent's claim, was occasioned by mistake, inadvertence, surprise or excusable neglect; (3) that the moving party acted with due diligence after notice of entry of the default judgment; and (4) that no substantial hardship will result to the opposing party.

*Id.* Though no single factor in this test is dispositive, the first two elements are considered to be the primary factors and are given greater weight. *Id.* The test balances the merits of the underlying claim resolved by default judgment with the party's reasons for failing "to timely appear in the action before the default." *Id.* at 353. If the movant demonstrates a "strong or virtually conclusive defense," then the court will spend minimal time considering the circumstances that deprived the parties from resolving the case on its merit. *Id.* at 352. But, if the movant only presents a prima facie defense, then the court will more heavily weigh the movant's failure to appear and defend the action. *Id.* at 352-53.

### a. Evidence of defense

As the moving party, Hawk's Superior carried the burden of demonstrating to the trial court that it satisfied the *White* test. *Id.* at 352 (holding that the primary and secondary factors of the test "must be shown by the moving party."). Thus, Hawk's Superior must show that it had a "strong or virtually conclusive defense" or that it can at least establish a prima facie defense. *Id.*

Here, Hawk's Superior failed to provide evidence of a strong or virtually conclusive defense to the breach of contract claim. In its answer to Boss's complaint, Hawk's Superior denied the accusations and asserted several affirmative defenses. And in its motion for relief, the only evidence Hawk's Superior provided addressing the underlying contract claim is found in a few sentences of Holley's supporting affidavit. There, Holley simply stated that Hawk's Superior had made no warranties or representations and that WSDOT had approved a substitute material from Hawk's Superior that Boss could use on the project. At best, this evidence would support a prima facie defense to Boss's breach of contract claim, not a strong or virtually conclusive defense. Because only a prima facie defense can be shown, Hawk's Superior's failure to appear and defend the summary judgment motion is weighed more heavily in balancing the *White* factors. *White*, 73 Wn.2d at 352-53.

    b.  No excusable neglect

Hawk's Superior argues that Holley's failure to respond to Boss's summary judgment motion was excusable neglect.[4] But where a party's failure to respond to properly served court

---

[4] Hawk's Superior did not argue "excusable neglect" in its motion for relief or at the motion hearing. Rather, in its motion, Hawk's Superior argued that the order granting summary judgment was obtained through "procedural irregularity." CP at 37. At the motion hearing, counsel specifically stated that its argument fell under the subsections of CR 60 (b)(1) of "mistake or inadvertence." VRP (May 31, 2016) at 4. Hawk's Superior did, however, raise excusable neglect in its motion for reconsideration. Hawk's Superior argues that because it specifically sought relief under CR 60(b)(1) in its motion for relief, *White* compels the superior court to make specific findings of fact on excusable neglect, even if the parties did not argue that ground specifically.

In general, appellate courts will not consider arguments raised for the first time on appeal. RAP 2.5(a); *Unifund, CCR, LLC v. Elyse*, 195 Wn. App. 110, 117-18, 382 P.3d 1090 (2016). However, in bringing a motion for reconsideration under CR 59, a party may preserve the issue for appeal if it is closely related to a previously asserted position and it does not depend on new facts. *River House Dev. Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 231, 272 P.3d 289

documents is due to a breakdown of internal office procedures, such failure does not constitute excusable neglect under CR 60(b)(1). *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 450, 332 P.3d 991 (2014), *review denied*, 182 Wn.2d 1006 (2015); *TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc.,* 140 Wn. App. 191, 213, 165 P.3d 1271 (2007); *Prest v. Am. Bankers Life Assur. Co.*, 79 Wn. App. 93, 100, 900 P.2d 595 (1995), *review denied*, 129 Wn.2d 1007 (1996). In *TMT,* Petco failed to appear or respond to TMT's breach of contract summons and complaint because the legal assistant responsible for entering the deadline into the calendaring system forgot to do so before leaving on an extended vacation. *TMT*, 140 Wn. App. at 197-98. The court rejected Petco's argument that this constituted excusable neglect under CR 60(b)(1). *Id.* at 213. Similarly, in *Prest,* the court held that the general counsel's failure to respond to a summons and complaint because the documents had been mislaid in the office while the general counsel was out of town was not excusable neglect. *Prest*, 79 Wn. App. at 100.

Hawk's Superior also argues that Holley's foresight in updating his address with the state bar association and postal service demonstrate excusable neglect in failing to notify the superior court of his address change. But Holley's efforts actually support the opposite conclusion. Holley made the effort to ensure certain entities were aware of his change in address. Yet, he failed to exercise the same care in the one case he had pending. Though no action had been taken in the case for a year and a half, Holley knew the case was still pending and his failure to update his address with the court clerk or opposing counsel represents inexcusable neglect. As in *TMT* and

---

(2012). Because Boss addresses Hawk's Superior's excusable neglect arguments in its responsive brief, we address the issue of excusable neglect.

*Prest*, such breakdown was due to his own internal case management. The superior court did not abuse its discretion in finding no excusable neglect under CR 60(b)(1).

### c. Mistake

Hawk's Superior next argues that the trial court erred in ruling that Holley's failure to receive actual notice of Boss's summary judgment motion was not a mistake justifying relief under CR 60(b)(1). We find this argument unpersuasive.

Courts have addressed mistake under CR 60(b)(1) in the context of insurance coverage cases. *Norton*, 99 Wn. App. at 120; *Akhavuz v. Moody*, 178 Wn. App. 526, 535, 315 P.3d 572 (2013). In *Norton*, the defendant in an auto accident claim notified his insurance company that he was involved in a motor vehicle accident. *Norton*, 99 Wn. App. at 120. His insurance company began settlement negotiations with plaintiff's counsel regarding plaintiff's claim for personal injuries resulting from the accident. *Id.* The parties were unable to reach an agreement and plaintiff's counsel served the defendant with a summons and complaint. *Id.* The defendant failed to forward the documents to his insurance adjuster because he thought his insurer was already handling the claim. *Id.* The court held that this misunderstanding between the defendant and his insurer constituted a mistake justifying relief under CR 60(b)(1) because it stemmed from a genuine misunderstanding as to who was responsible for answering the summons and complaint. *Id.* at 124.

Comparatively, in *Akhavuz*, the court rejected the defendant's claim that its insurer's failure to answer plaintiff's complaint was a mistake under CR 60(b)(1). *Akhavuz*, 178 Wn. App. at 535-36. There, the defendant received plaintiff's summons and complaint and forwarded it to his insurance adjuster. *Id.* at 530. The insurance adjuster never responded because he assumed the

parties were in the process of settlement negotiations. *Id.* at 536. The court held that this failure was not a mistake under CR 60(b)(1) because there was no misunderstanding between the defendant and his insurance company as to who was responsible for defending the plaintiff's claims. *Id.* at 535-36.

Thus, the kind of "mistake" justifying relief under CR 60(b)(1) occurs when there is a genuine misunderstanding as to who is responsible for defending a case. *Id.* at 537; *Norton*, 99 Wn. App. at 124. This aligns with the ordinary meaning of "mistake," which is "to take in a wrong sense" or "to be wrong in the estimation or understanding of." WEBSTER'S THIRD NEW INT'L DICTIONARY 1446 (2002).[5]

As in *Akhavuz*, Holley's failure to notify opposing counsel or the court of his change in address did not arise from a misunderstanding by Holley. Therefore, it did not constitute a mistake under CR 60(b)(1).

   d. Inadvertence

Hawk's Superior argues that Holley's actions constituted "inadvertence." Reply Br. of Appellant at 4. Because CR 60(b)(1) does not define "inadvertence," we give the term its "plain and ordinary meaning ascertained from a standard dictionary." *In re Marriage of Worthley*, 198 Wn. App. 419, 426, 393 P.3d 859 (2017) (quoting *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)).

---

[5] CR 60(b)(1) does not define "mistake." If a court rule does not define a term, we determine the plain and ordinary meaning of the term from a standard dictionary. *State v. Mankin,* 158 Wn. App. 111, 122, 241 P.3d 421 (2010), *review denied*, 171 Wn.2d 1003 (2011).

The ordinary meaning of "inadvertence" is "lack of care or attentiveness." WEBSTER'S, *supra*, at 1139 (2002). Here, Holley's failure to update his address was not inadvertent. Holley updated his address with the bar association and post office. Thus, Holley was aware of the need to update his address. As a result, the superior court did not abuse its discretion in finding that Holley's failure was not inadvertent under CR 60(b)(1).

Hawk's Superior fails to show that substantial evidence supports a strong defense to Boss's claim or that Hawk's Superior's failure to appear in the summary judgment proceedings was due to mistake, inadvertence, or excusable neglect. Thus, Hawk's Superior fails to show that it is entitled to relief under the *White* test.[6] Accordingly, the superior court did not abuse its discretion in denying Hawk's Superior's CR 60(b)(1) motion for relief from judgment.

B.    MOTION TO RECONSIDER

Hawk's Superior contends that the superior court abused its discretion in failing to address the *White* factors on review of its motion for reconsideration. We disagree.

Under CR 59(a)(7), upon motion of an aggrieved party, the superior court may vacate a verdict and grant a new trial where there is "no evidence or reasonable inference from the evidence to justify the verdict or the decisions, or that [the decision] is contrary to law." Further, under CR 59(a)(9), the court may vacate when "substantial justice has not been done."

---

[6] The parties do not dispute that Hawk's Superior met the secondary factors of the *White* test. However, given that Hawk's Superior fails to demonstrate the primary factors of the *White* test, which weigh more heavily, its due diligence in seeking review and Boss's threat of insubstantial hardship do not tilt in favor of Hawk's Superior. *White*, 73 Wn.2d at 352 ("The first two are the major elements to be demonstrated by the moving party, and they, coupled with the secondary factors, vary in dispositive significance as the circumstances of the particular case dictate.").

We review a superior court's denial of a motion for reconsideration for an abuse of discretion. *Christian v. Tohmeh*, 191 Wn. App. 709, 728, 366 P.3d 16 (2015). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 403, 196 P.3d 711 (2008). Though the court's discretion may result in a decision upon which reasonable minds may differ, it must be upheld if it is "within the bounds of reasonableness." *In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999) (quoting *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991)).

CR 59 does not prohibit a party from submitting new or additional evidence on reconsideration. *Martini v. Post*, 178 Wn. App. 153, 162, 313 P.3d 473 (2013). However, the trial court has discretion whether or not to consider additional evidence presented. *Id.* If the trial court exercises this discretion and considers the additional evidence, then it must view the evidence in the same way it would have in the underlying proceeding. *Id.* at 166.

In *Martini*, Martini brought a negligence claim against his landlord after his wife died in an apartment fire. *Id.* at 158. The superior court granted the landlord's summary judgment motion, finding that Martini failed to prove the element of proximate cause. *Id.* at 159. In his motion for reconsideration, Martini provided the court with additional evidence on causation. *Id.* at 166. Although the superior court considered the additional evidence, it declined to overturn its prior summary judgment ruling. *Id.* at 160. The court reversed, holding that because the superior court considered the additional evidence, it was required to view the evidence in the light most favorable to Martini, as this would be the standard in evaluating the underlying motion for summary judgment. *Id.* at 166.

Here, Hawk's Superior submitted additional evidence to the superior court in its motion for reconsideration. The superior court was not required under CR 59 to consider this evidence. However, the record shows that the superior court did consider Hawk's Superior's additional evidence because upon receiving Hawk's Superior's motion, the court required Boss to provide the court with further evidence to refute Hawk's Superior's defense. Once the superior court decided to weigh the new evidence, it was required to consider the evidence in the same way it would have in the underlying CR 60(b) motion. *Id*. Therefore, because the *White* factors controlled in the underlying CR 60(b)(1) motion hearing, the superior court was required to consider the new evidence in light of the *White* factors in ruling on Hawk's Superior's motion for consideration.

In its motion for reconsideration, Hawk's Superior presented stronger evidence in defense of Boss's breach of contract claim. Specifically, Hawk's Superior provided correspondence in which WSDOT approved Hawk's Superior's rock and gravel for use by Boss in the construction project. However, Boss provided a subsequent WSDOT e-mail correspondence in which WSDOT stated that Hawk's Superior's rock and gravel failed to meet its specifications upon further testing. At best, Hawk's Superior's additional evidence provided a prima facie defense. *White*, 73 Wn.2d at 352-53.

And although Hawk's Superior provided the court with stronger evidence in support of its motion for reconsideration, Hawk's Superior still did not present further evidence that Holley's failure to update his address was due to mistake, excusable neglect, inadvertence, or irregularity. In its motion for reconsideration, Hawk's Superior presented additional evidence regarding the mail forwarding process and the new tenant's process of providing Holley with any first class mail it received. However, this evidence does not support a finding that Holley's failure to update the

court clerk or opposing counsel of his address was a mistake, inadvertence, excusable neglect or due to irregularity in the court proceedings. Thus, we hold that the superior court did not abuse its discretion in denying Hawk's Superior's motion for reconsideration.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, P.J.

Melnick, J.